## Hays's Estate. McCutcheon's Appeal.

*Trusts—Counsel fees—Decedent's estate.*

Where an executor wastes the personal property of an estate, and the trustee of legatees whose legacies are charged on both the real and personal property, employs counsel and raises a fund through the sale of the real estate of the defaulting executor, and thus relieves the rest of testator's estate from loss, the trustee is entitled to the payment of his counsel fees out of testator's estate.

Argued Nov. 9, 1892. Appeal, No. 280, Oct. T., 1892, by Lydia C. McCutcheon et al., from decree of O. C. Allegheny Co., Feb. T., 1892, No. 189, ordering payment of legacies out of real estate of Wm. B. Hays, deceased. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Petition for payment of legacies out of real estate.

From the record it appeared that William B. Hays died in 1873, testate, leaving a large estate, both realty and personalty. He bequeathed to his grandchildren, legacies amounting to $45,000, all payable in future, with interest in the meantime. The balance of his estate he devised to his five children, William B., Jr., Lida C., Curtis H., Maggie H. and Mary Eva Hays, and directed that the share of Wm. B. Hays, Jr., in the real estate be charged with and made subject to the payment to the estate by him of $40,000 capital of testator in the firm of Wm. B. Hays & Co. The capital was to be retained by Wm. B. Hays, Jr., for five years, he paying interest at six per cent. The firm consisted of the testator and Wm. B. Hays, Jr. A. H. Miller and W. B. Hays, Jr., were named as executors, and the latter became acting executor. In 1876 Curtis H. Hays conveyed his interest in the estate to William B. Hays, Jr., and in 1879 partition of the real estate was made into five purparts, one of which was allotted to Wm. B. Hays, Jr., in his own right, and one in right of Curtis H. Hays, and one purpart was allotted to each daughter. At that time there was ample personal estate for the payment of all debts and legacies and a large surplus for distribution among the residuary devisees. Under the administration of Wm. B. Hays, Jr., however, the personal estate was dissipated and lost. The executor him-

self became insolvent and was discharged from his trust.   Letters of adminstration c. t. a. were then issued by the register to W. N. Riddle, and the orphans' court appointed W. A. Lewis trustee to collect and manage the legacies of $45,000 to grandchildren.

William B. Hays, Jr., had in the meantime mortgaged all the real estate allotted to him to the Allegheny National Bank.

In July, 1881, the Allegheny National Bank, having obtained judgment in the U. S. Circuit Court on its mortgage, issued execution and exposed both purparts to marshal's sale. Some time before the advertised day of sale, Lewis, the trustee, representing the $45,000 legacies, requested Riddle, the administrator, to join with him in his efforts to procure a favorable sale of the property in order that a sufficient fund might be raised for the payment of the legacies.   This Riddle declined to do, stating, in effect, that his counsel had advised him that the legacies and charges under the will would not be discharged or affected by the marshal's sale; that this advice agreed with the advice of the private counsel for the appellants; and that in so far as he, the administrator of the estate, was concerned, he would pay no attention to the sale.   Lewis, then retained counsel, who coincided in his view of the case.

Upon the day of the sale Riddle appeared and gave notice to bidders that they would take the property subject not only to the charges and legacies under the will, but subject to the subsequent mortgages as well.

At the instance of counsel for Lewis, an adjournment of the sale was granted, and in the interval of the adjournment Lewis and his counsel were successful in their efforts to convince the administrator that he was wrong.   The notice was withdrawn and the administrator bid upon the property and it was sold for $68,700.

Immediately following this sale notice was served upon the trustee by the appellants in this case, requiring him to insist upon payment of the $45,000 legacies out of the proceeds of the marshal's sale.

An auditor was appointed, before whom the trustee and his counsel appeared and took a leading part in the protracted and intricate litigation which ensued.   The mortgage and other individual creditors of William B. Hays, Jr., who had

advanced their money under the belief that the ample personal property of the estate was the primary fund for the payment of legacies, contending on the one hand that inasmuch as the executors of the will had neglected to realize the money from this personalty which, through mismanagement or misfortune, had been dissipated, the lien of the legacies had been lost; while the trustee on the other hand insisted that the rule of law applicable to the ordinary case, invoked by his opponents, had no application to a case where the testator himself had destroyed the distinction between personalty and realty. This position was sustained by the auditor.

This litigation finally resulted in the award of the net proceeds of sale of what is known as the Curtis H. Hays's purpart, amounting to $33, 511.55, to the trustee, and the payment of this sum to him Aug. 31, 1882, and the award and payment of a like sum to W. N. Riddle, administrator, c. t. a., being the net proceeds of the purpart taken by W. B. Hays, Jr., in his own right under the will of his father.

The trustee paid out of the moneys so received a counsel fee of $2,500, and claimed an allowance of $900 additional for his own personal services in the litigation. These payments he charged to the estate of William B. Hays by deducting them from the credit given on account of the legacies. The appellants claim that he should have credited the full amount without deducting the $3,400. The appellants further claim that this credit should be as of the date of the marshal's sale Aug. 31, 1881, and not as of the date of actual payment to the trustee one year thereafter.

The court filed the following opinion by HAWKINS, P. J.:

" 1. It is not now, and never has been disputed that W. B. Hays intended his grandchildren, represented by this petitioner, should receive legacies amounting to $45,000 out of his estate, and it is conceded that these legacies were charged on his lands. The question now presented is whether or not these legacies shall be paid without deduction for cost of administration. Had there been a personal fund brought into this court for distribution there can be no doubt but these legatees would have had a right to demand and receive the amount without deduction. And there is no reason why a different rule should prevail in respect of payment out of the

real estate. The whole, real as well as personal, was made assets for payment, and the interest of respondents was simply residuary. It is obviously immaterial how the amount was realized—whether through the executors or at the suit of a stranger—the legatees were entitled to the whole amount specified in the will, and the cost of realizing was simply part of the cost of administration for which the residuary estate was primarily liable.

"But this petitioner has a peculiar equity to reimbursement of the expenses incurred by him. Without his suggestion there would probably have been no fund realized from the marshal's sale of W. B. Hays, Jr.'s interest, and the whole burden of payment of these legacies have been thrown upon respondents' lands to their serious loss. It is conceded that this suggestion was beneficial to respondents; but it is insisted that when the administrator c. t. a. had been brought to act in accordance with it, the trustee's duty was done. Suppose the trustee had taken no further action and the administrator had received the whole fund, the cost of recovery must have been correspondingly increased and paid out of the fund, and the net proceeds on account must have passed into the trustee's hands as a credit on the legacies. But the court by its decree gave the administrator only half of the fund, and it must be conclusively presumed here that he was entitled to no more. The right to the other half was claimed by the individual mortgage creditors of Wm. B. Hays Jr., but the decree of the court justified the action of the trustee in continuing in the contest. So long as the fund reached this petitioner it was practically immaterial to the respondents by which course; the cost would have been about the same by either. The trustee need not have entered the contest. The purpose of the notice given by respondents must have been to preserve their equity against Wm. B. Hays, Jr., on account of his devastavit. But the waste of the personal estate had not affected the lien of the legacies, and he might well have waived claim on this fund and looked to the personal liability and lands of these respondents as residuary devisees of Wm. B. Hays, deceased. They were alike his debtors; the contest was theirs, and having successfully claimed the fund in their relief they should pay the cost. There is no principle better established or more just

than that those who receive a benefit must bear the incidental burthens : Shaffer v. Spangler, 144 Pa. 223.

" 2. Yeatman's Ap., 102 Pa. 297, followed by the Allegheny National Bank v. Hays, 39 Leg. Int. 375; s. c. 12 W. N. 338, firmly established the principle that in solvent estates interest should be allowed up to the date of actual payment, and rule this question."

Exceptions to allowance of claims with interest to date of payment were dismissed, and the court entered a decree in accordance with the opinion filed.

*Errors assigned* were, inter alia, (1–3) dismissing exceptions, quoting them.

*R. B. Petty*, for appellants, cited Grubb's Ap., 82 Pa. 29.

*W. H. McClung*, *J. A. Evans* with him, for appellee, cited Trustee v. Greenough, 105 U. S. 527 ; Kennedy's Est., 141 Pa. 483 ; Freeman v. Shreve, 86 Pa. 138 ; Winton's Ap., 87 Pa. 84.

PER CURIAM, January 3, 1893 :

The opinion of the learned judge of the orphans' court sufficiently vindicates his decree, which is affirmed for the reasons there given by him.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.